**GARDEN CITY CHAMBER OF COMMERCE, Inc. et al. v. WAGNER.**

Civil No. 11761.

United States District Court
E. D. New York.

Oct. 15, 1951.

James G. Moore, Garden City, N. Y., for plaintiffs (Joseph H. Wackerman, Brooklyn, N. Y., and Emerson A. Swartz, Floral Park, N. Y., of counsel).

Frank J. Parker, U. S. Atty., Brooklyn, N. Y., for defendant (George Taylor, Asst. U. S. Atty., Brooklyn, N. Y., of counsel).

BYERS, District Judge.

If the Court is empowered to reach a decision on the merits of this controversy, it will determine whether the plaintiffs are correct in their contention that a card which they seek to send through the U. S. Mails cannot be lawfully excluded therefrom on the theory that the scheme therein described is a lottery.

In substance it is designated as a treasure hunt, and involves the following steps:

(a) Each recipient of a card detaches therefrom a removable coupon bearing the same printed number as does the card itself. The sender retains the coupon, and (b) after mailing the card to the Chamber of Commerce, he (c) looks into the shop windows of the storekeepers who participate in the plan. (d) If he sees his number attached to an article displayed in one of those windows, he enters the store, presents his coupon, and receives that article.

Manifestly this is a joint effort to promote window shopping, which hitherto has not been deemed even faintly illegal or immoral.

The defendant has moved to dismiss the amended complaint, upon the only important ground that "the scheme is a lottery and comes within Section 36.6 of the Postal Laws and Regulations (1948 ed.)".

It is also urged that the Courts will not compel the performance of a discretionary act—meaning the exclusion from the mails of plaintiffs' literature. The plaintiffs have countered with a motion for an order enjoining defendant from refusing the privilege of the mails to plaintiffs, alleging irreparable injury.

The complaint cites Title 28 U.S.C. § 1339 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service.") Also Title 39 U.S.C.A. § 259, namely, R.S. § 3929, as amended.

It is the postal fraud statute and is too long to quote but may be paraphrased as the law which confers upon the Postmaster General the power to "instruct postmasters at any post office * * * (such as the one in Garden City) to return all such mail matter" to the sender, as shall indicate that the latter is "engaged in conducting any lottery, gift enterprise, or scheme for the distribution of money, or of any * * * personal property by lot, chance, or drawing of any kind * * *".

The basis for the action of the Postmaster General found in that statute is "evidence satisfactory to him".

■ Jurisdiction on the part of this Court would seem to be apparent, from the statute first quoted.

■ In the absence of an answer raising issues, the allegations of the amended complaint are taken to be true for present purposes, and it thus appears that the Solicitor has written a letter dated August 17, 1951, following a conference (Doyle aff.) in his office; there has been no formal hearing, and no order has been issued in the name of the Postmaster General. The gist of the letter is that, because the holders of coupons do the very thing that the plan proposes, i. e., visit the stores to look in the windows, they are deemed to provide the consideration which is the necessary element of a lottery. The language is: "The amendment offered (the disposition of unclaimed prizes after publication of an appropriate newspaper advertisement) does not eliminate the conditions which were contained in the original advertisement of the 'Treasure Hunt' including the requirement that the participant visit the numerous stores in Garden City between December 2 and December 15 in order to discover whether such participant is the holder of the 'lucky number on the prizes displayed in the windows'. This element of consideration, in addition to the elements of prize and chance involved, brings the enterprise within the prohibitions of the section cited (Sec. 36.6 and 36.9 of the Postal Rules and Regulations of 1948, 18 U.S.C. § 1302) insofar as the use of the mails in connection with the promotion of the scheme is concerned * * *."

The foregoing is to be read as supplementing an earlier communication dated December 12, 1950, from the same office, having to do with the same plan as carried out in that month, as set forth in paragraph 14 of the complaint, thus: "The winning of a prize in this plan depends, of course, upon chance. The element of consideration is present in the substantial amount of time and effort involved in examining (sic) the various prizes to ascertain whether one holds a winning ticket. The plan is accordingly in conflict with Section 36.6, P.L. & R., 1948, and all matter relating thereto, including the circular in question, is non-mailable."

The question of whether looking in a window is "examining" anything, need not be discussed.

Seemingly the officials were so belatedly alerted in December, 1950, that the plan was not devitalized by the postal authorities in that year.

There are thus drawn into question the statute, and the Rules and Regulations 36.6 and 36.9. For some reason not presently understood, the latter are but reprints of the former, and there seems to be no Regulation defining a lottery, and apparently reliance is had upon the following to fill the gap: The Postal Bulletin, February 13, 1947, p. 2.

"Instructions of the Solicitor

"Rulings on Lotteries, Gift Enterprises, Etc.

"All postmasters should carefully note the following with regard to the *present policy* (emphasis supplied) of the Office of the Solicitor in making rulings on lotteries, gift enterprises, etc., under section 601, P.L. & R., 1940.

"In order for a prize scheme to be held in violation of this section, it is necessary to show (in addition to the fact that the prizes are awarded by means of lot or chance) that the 'consideration' involves, for example, the payment of money for the purchase of merchandise, chance or admission ticket, or as payment on an account, *or requires an expenditure of substantial effort or time* (emphasis supplied). On the other hand, if it is required merely that

one's name be registered at a store in order to be eligible for the prize, consideration is not deemed to be present.

"If postmasters are in doubt as to whether or not matter relating to a particular plan should be treated as nonmailable, they should submit same to this office for a ruling as provided in section [36.6, P.L. & R.1948] 602 P.L. & R.1940."

The bracketed matter in the last line should be read into the ruling in place of the reference which actually follows.

The gist of the controversy is whether the "consideration", in order to constitute this plan a lottery, actually involves an expenditure of substantial effort or time; and even if it does, whether an essential element of a lottery is thereby exposed.

█ The validity of the ruling is necessarily open to question, for manifestly the Solicitor cannot declare that to be a lottery, which by its nature is not.

█ A convenient definition of a lottery is found in United States v. Wallis, D.C., 58 F. 942, 943, where it is said: "It may be sufficient to say that it embraces the elements of procuring through lot or chance, by the investment of a sum of money or something of value, some greater amount of money or thing of greater value."

The foregoing was written after examination of Horner v. United States, 147 U.S. 449, 13 S.Ct. 409, 37 L.Ed. 237.

See also National Conference on Legalizing Lotteries, Inc., v. Farley, Postmaster General, 68 App.D.C. 319, 96 F.2d 861, at page 863: "In Eastman v. Armstrong-Byrd Music Company, 8 Cir., 212 F. 662, 52 L.R.A.,N.S., 108, it was said—in the simplest definition that can be given—that a lottery is composed of three elements: Prize, consideration, and chance. The first two may exist in a game of skill; the last always converts the contest into a lottery or a gamble. The question then is whether the winning of the prizes under the instant scheme depends upon chance." Cited with approval, Affiliated Enterprises v. Gruber, 1 Cir., 86 F.2d 958.

In United States v. 83 Cases of Merchandise Labeled "Honest John", D.C., 29 F.Supp. 912, at page 915, Judge Coleman wrote: " * * * a composite summary of those definitions, and of what the Supreme Court gave as a definition of lottery, is that a lottery shall consist of a chance or chances taken, for a consideration, in the hope or expectation that something would be obtained *of greater value than that which was given up* (emphasis added), but with the full knowledge that nothing at all might be obtained; * * *."

True, this was not observed in connection with the postal laws, but it can scarcely be argued that in such context the word "lottery" has anything but the ordinary and accepted meaning.

█ The examination of authorities made in the present case induces the belief that the consideration requisite to a lottery is a contribution in kind to the fund or property to be distributed. I have found no case in which the element of consideration has resided in walking or driving to look in a window, which is manifestly not a contribution to the merchandise which is distributed; the value, if any, of the physical exercise cannot be compared to the value of the prize. If this were not so, the ruling would still be arbitrary and capricious, in that no factual data are employed to support a finding that the average participant would be required to put forth a "substantial" effort, whatever that means.

In the view of this Court, the Solicitor has ruled that to be a consideration, which by no common-sense process of reasoning can be so designated; no authority has been cited, nor discovered by independent effort, which vindicates the position taken for the defendant. While the use of the mails must be under governmental supervision, it is also to be remembered that the taxpayers, who shoulder a huge annual deficit from the operations of the Post Office, have a right to their day in court to contest that which imposes a strained and unnatural construction upon a word having a commonly accepted meaning.

█ If this were a doubtful case, and if the Postmaster General had indeed acted to seize letters, the Court would not intervene; Public Clearing House v. Coyne,

194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092. But it is not seen to be a doubtful case, but rather one in which official powers have been exercised in the mistaken assumption that there is presented an action upon a contract, in which the nature of the consideration might call for a precision of analysis; that is quite foreign to present requirements.

Assuming without deciding, that the Solicitor may issue interpretations of the statute which would have the effect of Regulations, it is apparent to this Court that what has been here announced as a departmental ruling is erroneous, in that the plan of the plaintiffs does not constitute a lottery, for the reasons above stated. Also that time is of the essence to the plaintiffs, and therefore prompt relief is in order.

■ For the defendant, it is urged that the Court may not decide these motions in the plaintiffs' favor, because the Postmaster General has not been made a party.

The answer is:

(a) Even in a fraud order case where the Postmaster General is not required to perform an affirmative duty in order to accomplish the plaintiff's purpose, he is not an indispensable party: Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95. On page 494 of 332 U.S., on page 189 of 68 S.Ct. the following occurs: "It is he (the local postmaster) who refuses to pay money orders, who places the stamp 'fraudulent' on the mail, who returns the mail to the senders. If he desists in those acts, the matter is at an end."

Here, if the defendant ceases to refuse the proffered mail, the matter is equally at an end.

(b) There is no order issued under the name of the Postmaster General which is sought to be reviewed.

■ The defendant also argues that the Court should not compel the performance of a discretionary act; such is not seen to be the object of the plaintiffs. In the view here taken, there has been no finding, supported by facts adduced at a hearing. The Solicitor has simply ordered the defendant to refuse to handle mail properly tendered, for reasons which do not sustain the action.

The defendant's motion for summary judgment is denied, and the plaintiffs' motion for an order enjoining the defendant from refusing to accept and transmit the pieces of mail described in the amended complaint is granted.

Settle order.